LAW OFFICES OF NICOLAI COCIS
Nicolai Cocis (204703)
nic@cocislaw.com
25026 Las Brisas Rd.
Murrieta, CA 92562
Phone: 951-695-1400

LIBERTY COUNSEL
Mathew D. Staver*
mstaver@lc.org
Horatio G. Mihet*
hmihet@lc.org
Daniel J. Schmid*
dschmid@lc.org
Mariah Gondeiro (323683)
mgondeiro@lc.org
P.O. Box 540774
Orlando, FL 32854
Phone: 407-875-1776
Fax: 407-876-0770
*Admitted Pro Hac Vice

*Attorneys for Plaintiff Child Evangelism Fellowship of NorCal, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

*Oakland Division*

| | |
|---|---|
| CHILD EVANGELISM FELLOWSHIP NORCAL,<br><br>Plaintiff,<br><br>v.<br><br>OAKLAND UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION; DR. KYLA JOHNSON-TRAMMELL, in her official capacity as Superintendent of Oakland Unified School District,<br><br>Defendants. | Case Number: 4:24-cv-8945-HSG<br><br>**CASE MANAGEMENT STATEMENT**<br><br>**Case Management Conference:**<br>**Time: 2:00 PM**<br>**Date: November 18, 2025 via ZOOM** |

Pursuant to this Court's Order granting Plaintiff's Motion for Preliminary Injunction (ECF No. 46), the Court's November 10 Order (ECF No. 53), and Civil Local Rule 16-9, Plaintiff, Child Evangelism Fellowship NorCal, Inc. ("CEF"), hereby submits this Case Management Statement and Proposed Order:

**1.   Jurisdiction and Service.**

Plaintiff CEF raises claims under the First and Fourteenth Amendments to the United States Constitution and under various laws of the State of California. *See* ECF No. CEF brought its claims pursuant to 42 U.S.C. §1983.

This Court has jurisdiction over the instant matter under 28 U.S.C. §§1331 and 1367.

All Defendants were served with process on December 18, 2024. (ECF No. 27, 28.)

**2.   Facts.**

CEF is a subsidiary of Child Evangelism Fellowship Inc., an international non-profit children's ministry that provides more than 3,000 Good News Clubs in public elementary schools across the United States. (ECF No. 1, "V. Compl.," ¶¶14, 16.) CEF has offered the Good News Club to elementary school students in OUSD for over a decade. (*Id.*, ¶¶1, 14.) The Good News Club is an after-school enrichment program providing religious and other teaching and activities to encourage learning, spiritual growth, and service to others, as well as social, emotional, character, and leadership development. (*Id.*, ¶15.) The Good News Club meets once per week and welcomes all children, regardless of religious background or belief. (*Id.*, ¶17.) The Good News Club does not charge a fee or engage in fundraising but instead relies on charitable donations. (*Id.*, ¶18.) The club meets right after school at OUSD facilities for the convenience of parents. (*Id.*, ¶¶17, 19.)

California law mandates that public school districts make their facilities available for after-school use to nonprofit organizations. *See* Cal. Educ. Code §38134(a)(1) ("The governing board of a school district shall authorize the use of school facilities or grounds under its control by a nonprofit organization, by a club or by an association organized to promote youth and school activities, including, but not necessarily limited to, any of the following: The Girl Scouts; the Boy Scouts; Camp Fire USA; or the YMCA . . . ."). California law grants local school districts the authority to "promulgate all rules and regulations necessary" to achieve the purposes of the California Civic Center Act. *Id.*, §31833.

Pursuant to state law, OUSD adopted Board Policy 1330, which "authorizes the use of District facilities by groups or persons for purposes provided for in the Civic Center Act to the extent that such use does not endanger students or staff and does not interfere with District- or school-related programs, activities or other uses." **(**V. Compl., ¶23; ECF No. 1-1.) The Superintendent is authorized to "establish additional priorities for or restrictions on the use of District facilities as she deems appropriate and necessary." **(***Id.*, ¶26; ECF No. 1-1, at 1.)

OUSD Administrative Regulation 1330 requires the Superintendent or a designee to "maintain application procedures and Terms of Use for the use of District facilities," and states that the Superintendent shall "[e]ncourage and assist groups or persons desiring to use District facilities for approved activities." (*Id.*, ¶29; ECF No. 1-2, at 1.) Administrative Regulation 1330 provides that OUSD facilities shall be made available for public and community uses, including for public, literary, scientific, recreational, and educational purposes. (*Id.*, ¶30; ECF No. 1-2, at 1-2.) Administrative Regulation 1330 also grants the Superintendent or designee the right to temporarily suspend facility use from any group for up to three months. (*Id.*, ¶31.) It "provides no standards for such a decision and requires no explanation of the decision." (*Id.*)

OUSD's Terms of Use policy prioritizes certain facility uses including: "(1) District or school-related activities, (2) City of Oakland activities/events, (3) community youth groups, (4) community organizations, and (5) all other uses that are subject to first-come, first-served basis." (*Id.*, ¶34; V. Compl. Ex. 3, at 3.) OUSD's Terms of Use policy states that "the ultimate and sole discretion" concerning facility use is given to the OUSD Superintendent or designee. (*Id.*; ECF No. 1-3, at 1.) OUSD may charge a user a fee, which depends on various factors, but any fee is ultimately determined at "the sole discretion of OUSD." (*Id.*) Similar to OUSD Administrative Regulation 1330, the Terms of Use policy "provides the Superintendent or designee with discretion to suspend organizations from use of District facilities but provides no standards for such a decision and requires no explanation of the decision." (*Id.*, ¶36; ECF No. 1-3, at 4.)

"OUSD also allows prospective individuals and organizations to use its facilities through its community partnership process." (*Id.*, ¶37; ECF No. 1-4.) Prospective partners are directed to fill out a

Prospective Partner Inquiry Form, which asks individuals or organizations "to select the community strategy that best describes the program it seeks to offer, including Academic Learning, Expanded Learning (After School & Summer), Family Engagement and Support, Health and Wellness, School Culture and Climate, School Readiness and Transitions, Social Emotional Learning, Youth Leadership, and Other." (*Id.*, ¶¶38-39; ECF No. 1-4, at 2.) OUSD's policies and practices concerning facility use are hereinafter collectively referred to as "Use Policies."

For nearly two years now, OUSD has engaged in a systematic and continuous denial of CEF's requests for access, providing CEF with pretextual and unconstitutional reasons for denying them access to school facilities. (V. Compl., ¶41.) Prior to COVID-19, in 2020, CEF had an active presence at OUSD for over a decade. (*Id.*, ¶42.) In January and February of 2023, CEF submitted use applications through Facilitron to several schools, including Lincoln, Allendale, Montclair, Greenleaf, Fruitvale, and Sequoia Elementary Schools, and Oakland Academy of Knowledge. (*Id.*, ¶43.)

***Lincoln Elementary School***. On January 17, 2024, CEF submitted a facility use application through OUSD's Facilitron system, requesting space to host a Good News Club at Lincoln Elementary School. (*Id.*, ¶45; ECF No. 1-5.) Director of CEF Korede Adeniji-Grimsley followed up with an email to Principal Mukta Sambrani on January 18, 2023. (*Id.*, ¶46; ECF No. 1-6.) On January 23, 2023, Principal Sambrani responded, saying, "We do not think that Good News Club is a match for Lincoln Elementary School. I will not be granting the facilities request." (*Id.*, ¶48.) Director Adeniji-Grimsley responded, seeking an explanation and even offered to meet with Principal Sambrani. (*Id.*, ¶49.) Principal Sambrani rejected the request to meet and responded with the following: "I discussed the request from the Good News Club with teacher leadership at Lincoln. We reviewed your website…As a public school, we are not in support of Evangelism on our campus." (*Id.*, ¶51 (emphasis added).)

On January 24, 2023, CEF Director Adeniji-Grimsley sent an email to Principal Sambrani asking for further clarification and informed her that the Supreme Court has held that CEF is entitled to equal access at public-school facilities. (*Id.*, ¶52.) Principal Sambrani did not respond. (*Id.*, ¶53.) Instead, Staff Attorney Lynn Wu responded, informing Director Adeniji-Grimsley that "the Good News Club could not meet at its requested time on Thursdays because it would conflict with Lincoln's after school

program, East Bay Asian Youth Center. ("EBAYC"). (*Id.*, ¶54; ECF No. 1-7.) "EBAYC is a non-profit community organization that purports to impact the lives of young people in low-income neighborhoods by increasing their life functioning strengths and independent living skills, particularly in communities with significant Asian youth populations." (*Id.*, ¶55.)

On August 28, 2023, CEF sought to renew its facility use application for the 2023-24 school year. (*Id.*, ¶58.) CEF also sought equal access to the community partnership forum. (*Id.*, ¶59.) District Program Manager Priscilla Hamilton informed CEF that the school would likely deny CEF access because it was religious. (*Id.*, ¶60.) Meanwhile, OUSD grants access to the community partnership forum to numerous similarly situated secular organizations, including Bay Area Community Resource Center, East Bay Agency for Children, EBAYC, Girls Inc., Jewish Community Center of East Bay, Love.Learn.Success, Oak Leaf Foundation, Safe Passages, YMCA of the East Bay, and Youth Together. (*Id.*, ¶61.) CEF's counsel sent legal correspondence to OUSD officials explaining the unconstitutionality of denying CEF access to OUSD facilities and its partnership forum on the basis of its religious viewpoint. (*Id.*, ¶62.) OUSD never responded to that correspondence. CEF's counsel also followed up with the original letter on January 16, 2024, but OUSD never responded. (*Id.*, ¶¶64-65.) To date, CEF has never received a response to its inquiries from OUSD, and continues to be denied equal access to similarly situated groups at Lincoln Elementary School. (*Id.*, ¶65.)

***Allendale Elementary School***. On February 21, 2023, Director Adeniji-Grimsley submitted a facility use application through Facilitron at Allendale Elementary School and followed up with an email correspondence to Principal Ronald Towns on February 23, 2023. (*Id.*, ¶¶66-67). Neither Principal Towns nor any OUSD official has ever responded to CEF's request to use facilities at Allendale Elementary School. (*Id.*, ¶68.) While denying CEF access for nearly two school years, OUSD has permitted a similarly situated nonreligious group, Girls Inc., to use its facilities after school at Allendale Elementary School. (*Id.*, ¶69.) As part of its quest for equal access, CEF's counsel likewise sent correspondence to OUSD concerning the denial of equal access to CEF at Allendale Elementary School. (*Id.*, ¶70.) OUSD has never responded to CEF's requests. (*Id.*, ¶71.)

***Sequioa Elementary School***. On February 15, 2023, Director Adeniji-Grimsley submitted a facility

use application through Facilitron at Sequoia Elementary School and followed up with an email correspondence to Principal LéJon Payne on February 16, 2023. (*Id.*, ¶¶72-73.) On February 21, 2023, Principal Payne responded, via email, stating "that she had not approved the Good News Club and that CEF should have met with her before submitting the facilities use request." (*Id.*, ¶74; ECF No. 1-16, at 2.) Director Adeniji-Grimsley responded to Principal Payne requesting to meet with her, as she had instructed, but never received a response. (*Id.*, ¶75.) On February 23, 2023, Administrative Assistant to Principal Payne informed CEF that Sequioa Elementary School had no space available for after-school use. (*Id.*, ¶76.) As part of its quest for equal access, CEF's counsel likewise sent correspondence to OUSD concerning the denial of equal access to CEF at Allendale Elementary School. (*Id.*, ¶77.) OUSD has never responded to CEF's requests. (*Id.*, ¶78.)

   *Montclair Elementary School*. On August 28, 2023, Director Adeniji-Grimsley submitted a facility use application to Montclair Elementary School. (*Id.*, ¶79.) Principal Kloker responded, via email, inquiring about the program CEF intended to host at Montclair. (*Id.*, ¶80.) Director Adeniji-Grimsley explained that the Good News Club was a free character-building educational program open to all families and students at Montclair and that the Good News Club offered its program from a religious viewpoint. (*Id.*, ¶81.) CEF's request for access to Montclair Elementary School was denied. (*Id.*, ¶82.) While denying CEF access to OUSD facilities at Montclair Elementary School, OUSD has permitted similarly situated nonreligious nonprofit organizations, such as Girls on the Run, to use its facilities every Tuesday and Thursday. (*Id.*, ¶¶82-83.) As part of its quest for equal access, CEF's counsel likewise sent correspondence to OUSD concerning the denial of equal access to CEF at Montclair Elementary School. (*Id.*, ¶84.) OUSD has never responded to CEF's requests. (*Id.*, ¶85.)

   *Greenleaf Elementary School*. In August 2023, CEF contacted Greenleaf Elementary School requesting access to host a Good News Club at OUSD facilities there. (*Id.*, ¶86.) The school advised Director Adeniji-Grimsley to work with the school's after-school program coordinator. (*Id.*, ¶86.) The school did not provide the coordinator's contact information but promised to pass CEF's information along to her. (*Id.*) The coordinator never reached out to Director Adeniji-Grimsley, so she called Principal Catherine McClane, who advised her to send a personal email. (*Id.*, ¶¶87-88.) CEF continued seeking

1 access to the forums available at Greenleaf, but never received any response to its email communication seeking such access. (*Id.*, ¶89.)

Director Adeniji-Grimsley was able to receive the contact information of Greenleaf's after-school program coordinator from a parent who wanted a Good News Club at Greenleaf. (*Id.*, ¶90.) Director Adeniji-Grimsley engaged with the Bay Area Community Resources ("BACR"), Greenleaf Elementary's after-school program provider, about the potential of CEF gaining access as a subcontractor for the provision of after-school programs to students at Greenleaf (*Id.*) BACR responded to CEF stating that CEF was not permitted to be included in the list of after-school program providers because it was religious. (*Id.*, ¶91.) Specifically, OUSD informed CEF that it was being denied access to that forum because BACR officials had received confirmation that it "cannot have any [B]ible clubs at school." (*Id.*, ¶91; ECF No. 1-21 (emphasis added).)

On October 24, 2023, Director Adeniji-Grimsley contacted OUSD's Outreach Coordinator, Rodolfo Perez, about hosting a Good News Club. (*Id.*, ¶93.) When Director Adeniji-Grimsley explained that CEF offered character-building education programs from a religious viewpoint, Mr. Perez immediately denied CEF's request and informed CEF that his denial was because CEF was a religious organization. (*Id.*, ¶¶ 93-94.) On November 13, 2023, CEF submitted a facility use application through Facilitron. (*Id.*, ¶96.) On November 21, 2023, the District unilaterally revised CEF's facility use request process, changing the hours requested from directly after school to the evening. (*Id.*, ¶97; ECF No. 1-24.) Director Adeniji-Grimsley immediately objected and noted that the "[t]ime change isn't feasible for an after school club. Based on BP 1330, we are supposed to have the same opportunity as the other after school programs to meet directly after school. Therefore, we would like the club to start from 2:45 until 4:30pm. Thank you." (*Id.*; ECF No. 1-25.) While OUSD officials were denying CEF access to facilities at Greenleaf, OUSD was permitting a similarly situated group named the 'Rainbow Club' to meet at Greenleaf, which provides 'a place where gender expansive students and allies can meet regularly to engage in fun activities designed to support diverse families, affirm varying identities, empower young minds and teach the importance of respecting differences.'" (*Id.*, ¶100.) As part of its quest for equal access, CEF's counsel sent correspondence to OUSD concerning the denial of equal access to CEF at Greenleaf Elementary

1   School. (*Id.*, ¶101.) OUSD has never responded to CEF's requests. (*Id.*, ¶102.)

2   ***Fruitvale Elementary School***. On February 15, 2023, Director Adeniji-Grimsley applied to use facilities at Fruitvale Elementary School through Facilitron and emailed Principal James Vaughn on February 16, 2023. (*Id.*, ¶¶103-04.) On February 25, 2023, OUSD approved CEF's application to use facilities at Fruitvale, and Director Adeniji-Grimsley and Principal Vaughn met at the school on March 13, 2023, to discuss the Good News Club and its assigned room. (*Id.*, ¶¶105-06.) However, as Director Adeniji-Grimsley was driving away from this meeting, Principal Vaughn's office called to revoke CEF's approval because CEF was purportedly not an approved vendor. (*Id.*, ¶¶106-107.) CEF submitted another facility use application through Facilitron on August 28, 2023, but has received no response. (*Id.*, ¶109.) As part of its quest for equal access, CEF's counsel sent correspondence to OUSD concerning the denial of equal access to CEF at Fruitvale Elementary School. (*Id.*, ¶111.) OUSD has never responded to CEF's requests. (*Id.*, ¶112.)

***Oakland Academy of Knowledge***. On February 15, 2023, CEF applied to use the facilities at Oakland Academy of Knowledge through Facilitron but received no response. (*Id.*, ¶¶113-14.) Despite denying CEF's application by refusing to approve it, Oakland Academy of Knowledge permits similarly situated groups, including Girls on the Run, to use its facilities twice per week, every week. (*Id.*, ¶115.) As part of its quest for equal access, CEF's counsel likewise sent correspondence to OUSD concerning the denial of equal access to CEF at Oakland Academy of Knowledge. (*Id.*, ¶116.) OUSD has never responded to CEF's requests. (*Id.*, ¶117.)

On August 28, 2023, Director Adeniji-Grimsley met with the program manager at the Office of Expanded Learning over zoom to discuss partnership opportunities. (V. Compl., ¶119.) Ms. Hamilton, OUSD's program manager, "noted that it was very unlikely that the District would approve a partnership application for CEF due to its religious programming, but that it would be almost impossible for CEF to gain access to any OUSD facility without such partnership status." (*Id.*, ¶121.) Director Adeniji-Grimsley also reached out to Community Partnership Manager Martin Young three times after submitting a community partner application. (*Id.*, ¶122.) After three months, Manager Young finally responded on September 6, 2023, stating that there "are no open public bidding opportunities for service providers to

my knowledge." (*Id.*, ¶122; ECF No. 1-33.) "To date, no one from OUSD has responded to CEF's pending community partner application." (*Id.*, ¶125.)

Meanwhile, OUSD allows a host of similarly situated activities and organizations to use its facilities, "including Bay Area Resources Center, East Bay Agency for Children, EBAYC, Envisioneers, Girls Inc. of Alameda County, Higher Ground Neighborhood Development Corp., Jewish Community Center of the East Bay, Oakland Kids First, Oakland Leaf Foundation, Safe Passages, Ujimaa Foundation, YMCA of the East Bay, Youth Together, The Girl Scouts, The Boy Scouts, and other groups who offer programs similar to CEF from a nonreligious perspective." (*Id.*, ¶127.)

Many of these groups offer similar character-building programs from secular viewpoints or other religious viewpoints. For instance, the Jewish Community Center of East Bay discusses ideas and values to children from Jewish culture and tradition. The Girl Scouts and Boy Scouts offer character-building from a secular viewpoint and often discuss issues to children regarding sexuality, religion, and issues affecting the LGBTQ community. (*Id.*, ¶130.) OUSD also recognizes numerous groups that discuss ways to serve others in the community, including Bay Area Resources Center (literary support and student leadership programs), Envisioneers (project-based learning and community mentors), Oakland Kids First (academic peer mentorship), and Student Program for Academic and Athletic Training (academic and athletic training). (*Id.*, ¶132.)

As a result of OUSD's facility use policies and the discriminatory application of those policies, this Court issued a Preliminary Injunction, enjoining Defendants from continuing to discriminate against CEF's religious viewpoint. (ECF N0. 46.)

**3. Legal Issues.**

The legal issues presented in CEF's Complaint against Defendants include: (a) whether Defendants' Use Policies and the application of those Use Policies violate the Free Speech Clause of the First Amendment by discriminating against CEF on the basis of its religious viewpoint and content; (b) whether Defendants' Use Policies and the application of those Use Policies violate the Free Speech Clause of the First Amendment as a presumptively unconstitutional prior restraint that lacks adequate procedural safeguards, impermissibly grants Defendants' officials unbridled discretion, and otherwise

fails to set limits on the application of its application scheme; (c) whether Defendants' Use Policies and the application of those Use Policies violate the Free Exercise Clause of the First Amendment by discriminating against CEF on the basis of its religious views and singling it out for disfavored treatment on the basis of its religious views; (d) whether Defendants' Use Policies and the application of those Use Policies violate the Establishment Clause of the First Amendment by discriminating against CEF on the basis of its religious views, failing to accommodate CEF's views in a neutral manner, and otherwise demonstrates impermissible and unconstitutional hostility towards CEF's religious views; (e) whether Defendants' Use Policies and the application of those Use Policies violate the Equal Protection Clause of the Fourteenth Amendment by discriminating against CEF on the basis of its religious views and treating its less favorably than other similarly situated organizations offering programs of interest to students in OUSD; and (f) whether Defendants' Use Policies and the application of those Use Policies violate the California Civic Center Act.

**4.    Motions.**

CEF filed a Motion for Preliminary Injunction (ECF No. 2) at the same time that it initiated the instant action. This Court held a hearing on that Motion on February 27, 2025 (ECF No. 37), and subsequently granted CEF's Motion and entered the Preliminary Injunction against Defendants. (ECF No. 46.)

Currently, there are no pending Motions.

CEF anticipates that after the conclusion of discovery, it will file a motion for summary judgment raising similar grounds to those raised in the Motion for Preliminary Injunction and upon which this Court entered a preliminary injunction. (ECF No. 46.)

Defendants' current position is unknown to Plaintiff, but in the last status report noted that they did not expect to file any additional motions.

**5.    Amendment of Pleadings.**

At this time, CEF does not believe that it will be necessary to amend its Verified Complaint to add any parties or claims.

At this time, Defendants' current position is unknown to Plaintiff, but in the last status report Defendants did not expect there to be any amendment of the pleadings.

**6. Evidence Preservation.**

CEF and Defendants previously certified, and Plaintiff again hereby certifies that they and their counsel have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information (ESI Guidelines), and that this CMS confirms that the parties have conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7. Disclosures.**

The parties have conferred regarding the service of Initial Disclosures. Defendants' current position is unknown to Plaintiff, but Plaintiff proposes that all disclosures required by Fed. R. Civ. P. 26(f) be served prior to December 15, 2025.

**8. Discovery.**

No discovery has taken place to date in this matter.

CEF does not anticipate that discovery will be complicated or voluminous and that all regular limitations imposed by the Federal Rules of Civil Procedure concerning the scope and extent of discovery will be sufficient for this action. CEF has informed Defendants that it is willing to enter into a stipulated e-discovery order and proposes the dates listed *infra* Section 16.

Defendants' current position is unknown to Plaintiff, but in the last status report Defendants noted that they anticipate their discovery will fall within the scope of the limitations imposed by the FRCP.

**9. Class Actions.**

This is not a class action, and CEF does not intend to move for any such certification.

**10. Related Actions.**

To the parties knowledge, there are no actions pending that relate to this instant matter.

**11. Relief.**

CEF is seeking a declaratory judgment and permanent injunction, enjoining Defendants' Use Policies and the application of those Use Policies. (*See* ECF No. 1, V. Compl., at Prayer for Relief, 27-28.) CEF seeks nominal damages in the amount of $100.00, and the costs and expenses, including a reasonable attorney's fee, under 42 U.S.C. §1988.

**12. Settlement and ADR.**

CEF contends that, for the reasons articulated in the Court's Preliminary Injunction Order (ECF No. 46), the instant matter has the potential to be settled via settlement discussions or mediation. No ADR has been conducted to date, but the Parties engaged in settlement discussions regarding the matter. After initially reaching what the Parties believed was a settlement in principal, Plaintiff's counsel was informed that Defendants are currently in violation of the Preliminary Injunction, which resulted in a breakdown of settlement communications.

**13. Other References.**

This matter is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14. Narrowing of Issues.**

CEF contends that, for the reasons articulated in the Court's Preliminary Injunction Order (ECF No. 46), the matter could be resolved expeditiously through the dispositive motion practice at the conclusion of discovery. CEF contends that the majority of issues pertaining to its Verified Complaint and the claims raised therein are largely legal questions that can be resolved expeditiously with discovery and dispositive motion practice. CEF contends that, to the extent its claims are not fully resolved via settlement and entrance of a Final Judgment and Permanent Injunction or at summary judgment, the evidence could be presented expeditiously at trial via stipulation of facts concerning Defendants' Use Policies, the exhibits already entered into the record via CEF's Verified Complaint (*see* ECF No. 1-1 through 1-33), Defendants' application of their Use Policies, and the testimony offered by its officials in discovery.

Defendants' current position is unknown to Plaintiff, but in the last status report Defendants agreed that many of the issues can be resolved via dispositive motions at the conclusion of discovery.

**15. Expedited Trial Procedure.**

Though the Expedited Trial Procedure of General Order 64 has been abrogated, CEF believes that some manner of expediting the trial is appropriate and is willing to enter into an agreement concerning such procedures.

Defendants' current position is unknown to Plaintiff, but in the last status report Defendants were not

prepared to agree to an expedited trial procedure at this point.

**16.  Scheduling.**

Defendants' current position is unknown to Plaintiff, but Plaintiff proposes the following dates for the administration of this case:

    (a) Completion of ADR/Settlement Discussions: March 31, 2026

    (b) Designation of Experts: May 15, 2026

    (c) Discovery Completion: May 15, 2026

    (d) Dispositive Motion Deadline: August 14, 2026

    (e) Dispositive Motion Hearing: TBD in October 2026

    (f) Pretrial Conference: TBD in November 2026

    (g) Trial: TBD in December 2026

**17.  Trial.**

CEF has not demanded a jury trial, and does not contend that one is necessary. To the extent that this matter is not fully resolved via dispositive motions, CEF contends that a trial could be completed in 3-4 days.

**18.  Disclosure of Non-Party Interested Entities and Persons.**

CEF hereby states that it is a nonprofit organization incorporated under the laws of the State of California and is affiliated with Child Evangelism Fellowship, Inc., an international nonprofit organization incorporated under the laws of the State of Missouri. Apart from Plaintiff, no firm, partnership, corporation, or other entity has any financial interest in the subject matter in controversy or in a party to this proceeding or has any other kind of interest that could be substantially affected by the outcome of the proceeding.

Defendants are government entities and/or government employees.

**19.  Professional Conduct.**

All counsel of record have previously noted that they reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20.   Other.**

Plaintiff hereby states that it does not have any other issues to present in this CMS Report.

            Respectfully submitted,

            /s/ Daniel J. Schmid
            Mathew D. Staver*
            Horatio G. Mihet*
            Daniel J. Schmid*
            Mariah Gondiero (323683)
            LIBERTY COUNSEL
            P.O. Box 540774
            Orlando, FL 32854
            (407) 875-1776
            court@lc.org
            hmihet@lc.org
            dschmid@lc.org
            mgondiero@lc.org
            Attorneys for Plaintiff
            *Admitted Pro Hac Vice

            /s/ Nicolai Cocis
            Nicolai Cocis (204703)
            LAW OFFICES OF NICOLAI COCIS
            25026 Los Brisas Rd.
            Murrieta, CA 92563
            (951) 695-1400
            nic@cocislaw.com

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Manage Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated:

_____
United States District Judge